UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

MOUNIA EL-ARAR, as Personal Representative
of the Estate of WAFAE EL-ARAR, ET AL.

     Plaintiffs,

CIVIL ACTION NO.: 1:26-cv-10534

v.

ROYAL KAHAL RESORT LTD., ET AL.

     Defendants.

---

## **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT EXPEDIA, INC.'S MOTION TO DISMISS**

i

## TABLE OF CONTENTS

**STATEMENT OF FACTS** ...................................................................................................**5**

**STANDARD OF REVIEW** ..............................................................................................**6**

**I. PLAINTIFFS HAVE SATISFIED THE PLAUSIBILITY STANDARD UNDER RULE 12(b)(6)** ................................................................................................................**7**

**II. THE COMPLAINT PLAUSIBLY ALLEGES THAT EXPEDIA HAD ACTUAL KNOWLEDGE OF DANGEROUS CONDITIONS**………...……………………………………………………….…..**7**

**III. EXPEDIAS CONDUCT GOES FAR BEYOND THAT OF A PASSIVE LISTING WEBSITE AND GIVES RISE TO A DUTY OF CARE**…....................................................**9**

**IV. PLAINTIFFS HAVE ADEQUATELY PLED GROSS NEGLIGENCE** …………...**12**

**V. EXPEDIA'S LIMITATION OF LIABILITY CLAUSE DOES NOT BAR PLAINITFFS'CLAIMS**………………………...…………………………………………..**13**

**VI. THE CONSCIOUS PAIN AND SUFFERING CLAIM PROCEEDS WITH THE UNDERLYING CLAIMS**…………………………………………………………………..**14**

**VII. PLAINTIFFS SHOULD BE PERMITTED NOTICE RELATED AND TERMS-OF-SERVICE DISCOVERY OR LEAVE TO AMEND**…………...………..**15**

**CONCLUSION**………………………………………………………………………...**15**

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................3,4

*Christopher v. Father's Huddle Café, Inc., 57 Mass. App. Ct. 217,230 (2003)* ..........................10

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ................................................................................4

*Foman v. Davis, 371 U.S. 178,182 (1962)* ..................................................................................13

*Frappier v. Countrywide Home Loans, Inc.*, 750 F.3d 91, 96 (1st Cir. 2014) ...............................4

*GGNSC Administrative Services, LLC, v. Schrader, 484 Mass. 181 (2020)* .................................12

*Gonzalez v. Viator Tours, Inc., No 1:24-cv-12304-JEK, 2025 WL 2420943 (D. Mass. Aug. 20, 2025)* ............................................................................................................................................9

*Hofer v. Gap, Inc., 516 F. Supp. 2d 161 (D. Mass. 2007)* ...........................................................9

*Mullins v. Pine Manor Coll., 389 Mass. 47,52 (1983)* ................................................................8

*Ocasio-Hernandez v Fortuno-Burset, 640 F.3d 1, 13 (1st Cir 2011)* ...........................................7

*Penate v. Hanchett, 944 F.3d 358, 362 (1st Cir. 2019)* ................................................................4

*Sharon v. City of Newton, 437 Mass. 99, 110 n.13 (2002*) ..........................................................11

*Snaza v. Howard Johnson Franchise Systems, Inc., No. 09-10017-PBS, 2009 WL 10694317, at \*3 (D. Mass. Dec. 22, 2009)* ............................................................................................................6

*Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) ........................................4

*Waters v. Min Ltd., 412 Mass. 64, 67-68 (1992)* .........................................................................12

*Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228, 249 (D. Mass. 2012)* ......................9

*Zavras v. Capeway Rovers Motorcycle Club, Inc., 44 Mass. App. Ct. 17, 18-19 (1997)* ..............11

**STATUTES**

Massachusetts General Laws Chapter 229§ 6 ..............................................................................12

**OTHER AUTHORITES**

Federal Rule of Civil Procedure 12(b)(6)………………………………………………….... 3, 4, 12,14

Federal Rule of Civil procedure 8(a)(2)…………………………………………………..…3

Restatement (Second) of Torts § 324…………………………………………………….......8

**INTRODUCTION**

Three young women from Massachusetts, Wafae El-Arar, Kaoutar Naqqad, and Imane Mallah, booked a trip to Belize at the Royal Kahal Resort through Expedia's online platform, relying on Expedia's representations, booking platform, and displayed reviews. They paid Expedia directly. They received booking confirmations from Expedia. They communicated with the resort through Expedia's messaging platform. They were never warned that the resort's water heaters were venting lethal carbon monoxide into guest suites or that functioning carbon monoxide detectors were absent. On February 20, 2025, all three died of carbon monoxide poisoning at the Royal Kahal.

Expedia now moves to dismiss, arguing that it owed no duty to warn and that its terms of service insulate it from all liability. Both arguments fail at this stage for three independent reasons.

First, Expedia's motion rests on a factual premise that it had no prior knowledge of the dangerous condition that cannot be established on the face of the Complaint. The precise timing of when Expedia received guest complaints, whether prior customers contacted Expedia directly through customer service, whether Expedia processed chargebacks or refund requests stemming from carbon monoxide incidents, and whether Expedia delayed, moderated, or screened reviews submitted to its platform before publication are facts in Expedia's exclusive possession. **The public posting date of a review is not the date Expedia first received notice.**

Second, Expedia was not a passive listing aggregator. It actively solicited the Decedents through targeted retargeting emails into Massachusetts; it made affirmative representations by holding itself out as a trusted provider of travel bookings and accommodations and characterizing Royal Kahal as a "tranquil getaway" with "Exceptional" reviews; it processed payment and took

1

a commission; and it served as the messaging intermediary between the Decedents and the Royal Kahal. These allegations support a plausible duty to exercise reasonable care, including a duty to warn of dangerous conditions as to which Expedia possessed actual knowledge through its own platform, customer complaints, refund requests, chargebacks, review submissions, review-moderation process, messaging system, or internal safety-escalation records.

Third, even on Expedia's own terms, its limitation of liability clause cannot bar Plaintiffs' claims at the pleading stage. Whether the Decedents validly assented is a factual issue. Whether the clause is enforceable and applicable to these claims is a factual issue. And under Massachusetts law and public policy, any contractual limitation cannot insulate Expedia from liability for gross negligence; in any event, the validity, scope, and enforceability of Expedia's alleged Terms of Service cannot be resolved on the pleadings. he Court should therefore deny Expedia's motion in its entirety.

## STATEMENT OF FACTS

The Decedents planned a trip to Belize and, while still in Massachusetts, viewed the Royal Kahal Beach Resort on Expedia's booking platform. Compl. ¶¶ 27–28. Expedia's website represented the resort as a "tranquil getaway" with "Exceptional" reviews. Compl. ¶ 29. After the Decedents browsed the listing, Expedia sent targeted retargeting emails directly to the Massachusetts Decedents urging them to complete the booking. Compl. ¶ 30.

The Decedents booked the trip through Expedia, paid Expedia directly, and received an itinerary confirmation from Expedia: 'Thank you, Wafae! Your reservation is booked and confirmed.' Compl. ¶ 32. The total package price of $3,862.67 was processed through Expedia's platform, with Expedia retaining its commission before remitting the balance to Royal Kahal. Compl. ¶ 33. Expedia also served as the messaging intermediary through which Royal Kahal

2

communicated with the Decedents in advance of the trip. Compl. ¶ 34. At no time did Expedia warn the Decedents that the Royal Kahal guest-suite water heaters were defective, deadly, or improperly installed, or that guests at Royal Kahal faced a risk of carbon monoxide poisoning. Compl. ¶ 31.

Critically, the Complaint alleges that, before the Decedents checked into their suite, prior guests had reported to Royal Kahal that they suffered symptoms consistent with exposure to carbon monoxide and reported high levels of carbon monoxide in their suites. Compl. ¶ 51. Some of those guests later posted reviews on Expedia's platform describing their experiences but the experiences they describe predate the Decedents' deaths. Id. One reviewer described being hospitalized three times during a December 28, 2024, to January 2, 2025, stay, ultimately diagnosed as carbon monoxide poisoning. Id. Another guest, who stayed February 17–21, 2025 (overlapping with the Decedents), described a carbon monoxide detector reading above 400 ppm and maintenance staff who "seemed unfamiliar" with how to address the issue. Id.

Following the deaths, Royal Kahal publicly announced that it had 'installed carbon monoxide detectors in all of our rooms,' an implicit concession that operable detectors had not previously been present. Compl. ¶ 52. Royal Kahal also removed the defective Navien NPE-210S water heaters from all suites and replaced them. Compl. ¶ 53.

## STANDARD REVIEW

Federal Rule of Civil Procedure 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a complaint must allege a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

3

570 (2007); *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013). Along with all well-pleaded facts, the Court must draw all logical inferences from a complaint in favor of the plaintiff. *Frappier v. Countrywide Home Loans, Inc.*, 750 F.3d 91, 96 (1st Cir. 2014); *Santiago Ramirez v. Secretary of Dep't of Defense of United States*, 62 F.3d 445, 446 (1st Cir.1995).

To avoid dismissal, "a complaint must contain enough facts 'to state a claim to relief that is plausible on its face.'" *Twombly*, 550 U.S. at 570. "In order to state a plausible claim, a plaintiff need only plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Twombly*, 550 U.S. 555–56. The plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

## ARGUMENT

### I.      Plaintiffs have satisfied the plausibility standard under Rule 12(b)(6).

To survive a motion to dismiss, a complaint need only contain 'enough facts to state a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). 'Plausibility' is not probability; it requires only that the facts alleged permit 'the reasonable inference that the defendant is liable for the misconduct alleged.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded facts as true and draw all reasonable inferences in Plaintiffs' favor. *Penate v. Hanchett*, 944 F.3d 358, 362 (1st Cir. 2019).

Expedia's motion asks the Court to resolve contested factual issues, including but not limited to, the timing and extent of Expedia's actual knowledge, the existence and enforceability of any alleged online agreement, the scope of Expedia's relationship with the Decedents, and the reasonableness of Expedia's conduct, all at the pleading stage and without discovery. That is precisely the inquiry that Rule 12(b)(6) does not permit.

4

II.    **The complaint plausibly alleges that Expedia had actual knowledge of dangerous conditions, and discovery will confirm when and how Expedia received that knowledge.**

A.    **The public posting date of a review is not the date Expedia received notice.**

Expedia's central argument is that the negative guest reviews were not posted publicly until after the Decedents' deaths and therefore cannot establish prior knowledge. This argument fundamentally conflates the date a review was published on Expedia's website with the date Expedia first received notice of the underlying complaint. **Those dates are not necessarily the same.**

A customer who has a bad or in this case, life-threatening experience at a hotel does not, in the ordinary course, first encounter Expedia by posting a public review. The customer contacts Expedia's customer service. The customer requests a refund. The customer disputes the charge with their credit card company, generating a chargeback that flows through Expedia's payment system. The customer submits a review that may be held in moderation, screened, or delayed before publication. Each of these channels would have put Expedia on notice well before any review became publicly visible.

The Complaint specifically alleges that prior guests "reported to Royal Kahal that they suffered symptoms consistent with exposure to carbon monoxide" and that "some of these guests later left reviews on Expedia." Compl. ¶ 51 (emphasis added). The phrase "some of these guests later left reviews" supports the reasonable inference, an inference the Court must draw in Plaintiffs' favor at this stage that the public posting date of the review does not conclusively establish when Expedia first received notice. Those guests may have contacted Expedia customer service, submitted refund requests, disputed charges, submitted reviews before publication, or

otherwise triggered Expedia's internal safety, review, or customer-service systems before any public review appeared.

### B.    Discovery will reveal the timing and scope of Experia's knowledge.

Courts applying Massachusetts law have recognized that a travel agent, tour operator, or booking intermediary may have a duty to warn customers of dangers where it has specific, actual knowledge of previous incidents. See *Snaza v. Howard Johnson Franchise Sys., Inc.,* No. 09-10017-PBS, 2009 WL 10694317, at *3 (D. Mass. Dec. 22, 2009). Whether Expedia possessed specific, actual knowledge before the Decedents arrived at Royal Kahal on or about February 20, 2025, is a factual question that cannot be resolved without access to Expedia's internal records. Specifically, and without limitation, the following categories of evidence are directly relevant to the knowledge exception, and are entirely within Expedia's exclusive possession:

- All customer service tickets, complaints, and direct messages received by Expedia regarding Royal Kahal Beach Resort from January 2024 through February 2025;

- All chargeback, dispute, or refund requests processed by Expedia in connection with Royal Kahal reservations during that period, including the stated reasons for those disputes;

- All reviews submitted by guests regarding Royal Kahal, including the date of submission (as distinct from the date of publication), and any reviews held in moderation, screened, edited, or rejected;

- Expedia's review moderation, screening, and publication policies and any internal communications applying those policies to Royal Kahal-related reviews;

- Internal risk, safety, quality, or fraud monitoring flags generated by Expedia's algorithms or staff with respect to Royal Kahal;

- Internal communications among Expedia personnel concerning Royal Kahal's safety, complaints, refund activity, or platform standing;

- All communications between Expedia and Royal Kahal concerning property safety, guest complaints, carbon monoxide, water heaters, or the accuracy of Royal Kahal's representations on Expedia's platform.

None of this information is publicly available. Plaintiffs are not required at the pleading stage to know the contents of Expedia's internal customer-service, refund, chargeback, review-moderation, and safety-escalation records before discovery. Dismissing Plaintiffs' claims before they have any opportunity to investigate these records would effectively immunize Expedia by denying Plaintiffs access to the only evidence capable of proving Expedia's knowledge. The First Circuit has recognized that the plausibility standard does not require plaintiffs to plead evidence within the defendant's exclusive control. *See Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). Plaintiffs have alleged facts that make Expedia's prior knowledge plausible; discovery will reveal whether it is provable.

### III.    EXPEDIA'S CONDUCT GOES FAR BEYOND THAT OF A PASSIVE LISTING WEBSITE AND GIVES RISE TO A DUTY OF CARE.

#### A.    Expedia actively solicited the decedents into Massachusetts.

Expedia's motion characterizes itself as a neutral, passive marketplace. The Complaint alleges a materially different picture. After the Decedents browsed the Royal Kahal listing, Expedia sent them targeted retargeting emails into Massachusetts urging them to complete the booking. Compl. ¶ 30. This was active, directed solicitation by Expedia of these specific consumers in Massachusetts, not a passive listing waiting to be discovered.

A travel platform that affirmatively solicits a consumer's business, processes payment, retains a commission, and controls customer-facing booking and messaging functions may owe duties beyond those of a passive listing service, particularly where it plausibly possessed actual knowledge of a deadly condition through its own platform, customer-service systems, review-submission process, refund records, chargeback records, messaging system, or safety-escalation records.

### B.    Expedia Made Affirmative Quality and Safety-Adjacent presentations.

Expedia did not merely host a listing. It made affirmative representations: that it is a "trusted provider of travel bookings and accommodations," and that Royal Kahal was a "tranquil getaway" with "Exceptional" reviews. Compl. ¶ 29. These representations were not neutral descriptions; they were curated quality assurances, designed to and actually inducing consumer reliance.

Under Massachusetts law, an actor that voluntarily undertakes to render services to another, and who knows or should know that the services are necessary for the other's protection, owes a duty of reasonable care in performing those services. See Restatement (Second) of Torts § 324; *Mullins v. Pine Manor Coll.*, 389 Mass. 47, 52 (1983) (recognizing duty arising from voluntary undertaking). Expedia voluntarily undertook to present, promote, rate, review, and facilitate bookings for accommodations to consumers seeking to rely on its booking platform and displayed representations. Having undertaken that role, Expedia cannot escape responsibility for performing it negligently, particularly where the failure involves a life-threatening hazard the platform had or should have had reason to know about.

### C.    Expedia had a direct financial and contractual relationship with the decedents.

Expedia did not merely host a listing in exchange for advertising revenue. The Decedents paid Expedia directly. Compl. ¶ 33. Expedia retained a commission. Id. Expedia issued a booking confirmation in the Decedents' names. Compl. ¶ 32. Expedia served as the messaging intermediary between the Decedents and Royal Kahal. Compl. ¶ 34. This is a direct, two-party, paid commercial relationship not the arms-length relationship Expedia describes.

8

Expedia relies heavily on *Hofer v. Gap, Inc.,* 516 F. Supp. 2d 161 (D. Mass. 2007). But Hofer was decided at summary judgment on a developed record. The question here is not whether Plaintiffs can ultimately prevail, but whether they have stated a plausible claim. They have.

*Gonzalez v. Viator Tours, Inc.,* No. 1:24-cv-12304-JEK, 2025 WL 2420943 (D. Mass. Aug. 20, 2025) is likewise distinguishable. There, the complaint failed to plausibly allege that the travel-platform defendants were responsible for, or controlled, the premises or condition that caused the injury. Here, Plaintiffs allege more: Expedia directly solicited the Decedents after they viewed the Royal Kahal on the Expedia website, processed their payment, retained a commission, issued the booking confirmation, served as the platform through which the Royal Kahal communicated with them, displayed the relevant reviews and rating, and maintained internal systems through which prior carbon-monoxide complaints, refund requests, chargebacks, or review submissions may have been received before any public posting date. Compl. ¶¶ 28–34, 51, 55–57.

> **D.    The Expedia booking supports discovery into Expedia's role in selecting, packaging, and promoting Royal Kahal.**

Expedia argues that the vendor-selection exception does not apply because the Decedents chose the Royal Kahal themselves. But the Complaint alleges more than a passive listing. The Decedents viewed Royal Kahal on Expedia, received targeted Expedia solicitations, booked through Expedia, paid Expedia directly, received an Expedia confirmation, and used Expedia's platform for resort communications. Compl. ¶¶ 28–34. The booking confirmation also reflects a transaction involving both roundtrip flights and accommodations. Compl. ¶ 33. At minimum, these allegations support the need for discovery into Expedia's role in packaging, promoting, curating, or selecting Royal Kahal as part of the transaction. See *Weinberg v. Grand Circle Travel, LLC,* 891 F. Supp. 2d 228, 249 (D. Mass. 2012).

## IV.    PLAINTIFFS HAVE ADEQUATELY PLED GROSS NEGLIGENCE.

Expedia argues that Plaintiffs have failed to plead facts supporting gross negligence. To the contrary, the Complaint alleges a catastrophic failure of safety systems: Expedia operated a platform that may have received and maintained guest complaints, refund requests, chargebacks, review submissions, and internal safety information; marketed Royal Kahal as an "Exceptional" resort; retained commissions on bookings; and on Plaintiffs' allegations failed to investigate, escalate, or warn about a deadly and recurring carbon-monoxide hazard as to which Expedia plausibly possessed actual knowledge through its own customer-service, refund, chargeback, review-submission, review-moderation, messaging, or safety-escalation systems. Failing to act in the face of repeated guest complaints about a known life-threatening hazard is precisely the kind of "indifference to present legal duty" and "utter forgetfulness of legal obligations so far as other persons may be affected" that defines gross negligence in Massachusetts. *Christopher v. Father's Huddle Café*, *Inc.*, 57 Mass. App. Ct. 217, 230 (2003).

Whether Expedia's conduct in fact rises to gross negligence will depend on what Expedia knew, when it knew it, what it did with that information, and what its internal policies required. None of those questions can be answered without discovery. At this stage, the allegations of repeated prior guest complaints, the existence of internal complaint channels, the safety-critical nature of the hazard, and Expedia's affirmative quality representations are more than sufficient to permit a plausible gross negligence claim to proceed.

10

**V.     EXPEDIA'S LIMITATION OF LIABILITY CLAUSE DOES NOT BAR PLAINTIFFS' CLAIMS.**

**A.     Enforceability cannot be resolved on a Motion to Dismiss.**

Whether the Decedents validly assented to Expedia's Terms of Service is a factual question that cannot be resolved on the pleadings. The enforceability of online terms turns on the conspicuousness of the terms, the adequacy of notice, the manner in which assent was requested, and the circumstances surrounding the user's alleged agreement, none of which is established by the Complaint.

**B.     Massachusetts Public Policy Prohibits Contractual Waivers of Liability for Gross Negligence.**

Even if the Terms of Service were validly assented to, Massachusetts courts have long held that contractual limitations on liability are unenforceable to the extent they purport to disclaim liability for gross negligence. See *Zavras v. Capeway Rovers Motorcycle Club, Inc.,* 44 Mass. App. Ct. 17, 18–19 (1997) ('A party cannot contract away liability for gross negligence.'); see also *Sharon v. City of Newton*, 437 Mass. 99, 110 n.13 (2002) (same). Plaintiffs have alleged gross negligence. Expedia's limitation clause cannot, as a matter of Massachusetts public policy, immunize it from that claim regardless of what the Decedents agreed to.

**C.     The Enforceability and Scope of the Limitation Clause Cannot Be Resolved on the Pleadings.**

Even apart from gross negligence, Expedia's limitation-of-liability argument depends on facts outside the Complaint. Expedia's Opposition does not attach the specific Terms of Service at issue. The Complaint does not attach Expedia's Terms of Service, does not plead how the Terms were displayed, does not establish what the Decedents saw, and does not establish knowing assent to the specific limitation Expedia invokes. Whether the clause was conspicuous, whether assent

11

was valid, whether the clause applies to Plaintiffs' claims, and whether enforcement would be unconscionable or contrary to Massachusetts public policy are factual questions not suitable for resolution on a Rule 12(b)(6) motion. *See generally Waters v. Min Ltd.,* 412 Mass. 64, 67–68 (1992).

### D.   *GGNSC Administrative Services, LLC v. Schrader* does not compel a different result.

Expedia cites *GGNSC Administrative Services, LLC v. Schrader*, 484 Mass. 181 (2020), for the proposition that decedents' contractual commitments bind their personal representatives. GGNSC does not compel dismissal. GGNSC involved whether a decedent's arbitration agreement could bind a personal representative asserting a wrongful-death claim. It did not involve a boilerplate online limitation-of-liability clause purporting to eliminate substantive negligence or gross-negligence liability. The case therefore does not resolve whether Expedia's Terms of Service were validly assented to, who assented to the terms, whether they apply to these claims, or whether they may be enforced consistently with Massachusetts public policy.

### VI.   THE CONSCIOUS PAIN AND SUFFERING CLAIM PROCEEDS WITH THE UNDERLYING CLAIMS.

Expedia's challenge to Count XII (conscious pain and suffering) is purely derivative of its challenge to Counts X and XI. Because the negligence and gross negligence claims are plausibly pled, the conscious pain and suffering claim survives as well. The Complaint alleges that the Decedents were overcome by carbon monoxide poisoning and suffered conscious pain and suffering before death. At the pleading stage, those allegations are sufficient to allow the claim under Mass. Gen. Laws ch. 229, § 6 to proceed with the underlying negligence and gross-negligence claims.

**VII.    AT MINIMUM, PLAINTIFFS SHOULD BE PERMITTED NOTICE-RELATED AND TERMS-OF-SERVICE DISCOVERY OR LEAVE TO AMEND.**

Even if the Court were to find any aspect of the Complaint deficient, dismissal with prejudice would be inappropriate. Leave to amend should be freely granted unless amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182 (1962). Plaintiffs maintain that the Complaint is sufficient as pleaded. In the alternative, if the Court concludes that further factual detail is required regarding Expedia's notice, assent to the alleged Terms of Service, or Expedia's role in the transaction, Plaintiffs respectfully request narrowly tailored discovery and/or leave to amend rather than dismissal with prejudice. Expedia's own records concerning customer complaints, chargebacks, refund requests, review submissions, review-moderation activity, safety escalations, and communications with Royal Kahal would bear directly on the pleaded notice issue and are uniquely within Expedia's possession.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Expedia's Motion to Dismiss in its entirety. The Complaint states plausible claims for failure to warn, gross negligence, and conscious pain and suffering. In the alternative, Plaintiffs request narrowly tailored discovery concerning Expedia's notice, internal complaint and review systems, refund and chargeback records, communications with Royal Kahal, and the alleged Terms of Service, together with leave to amend if the Court determines that additional factual allegations are required. The factual issues on which Expedia's motion depends when and how Expedia learned of the

dangerous conditions at Royal Kahal, whether Expedia received prior complaints, refund requests, chargebacks, or review submissions before the reviews became publicly visible, the scope of Expedia's voluntary undertakings, and the enforceability of its alleged liability waiver are precisely the kind of questions Rule 12(b)(6) does not allow to be resolved without discovery. The motion should be denied.

Dated: May 29, 2026.

Respectfully submitted, Plaintiffs
By Their Attorneys,

*/s/Louis J. Muggeo*
Louis J. Muggeo, Esq. (BBO #359220)
Jared J. Muggeo, Esq. (BBO #699190)
LOUIS J. MUGGEO & ASSOCIATES
133 Washington Street
Salem, MA  01970
(978) 741-1177
lmuggeo@ljmassoc.com
jared@ljmassoc.com

*/s/ Thomas Scolaro*
Thomas Scolaro, Esq.
Florida Bar No. 178276
William Thomas Rieder, Jr., Esq.
Florida Bar No. 0044834
1728 Coral Way, Suite 702
Miami, Florida 33145
(305) 424-2300
(305) 424-2140 Facsimile
tom@usinjury.law
billy@usinjury.law
barbie@usinjury.law
*Co-Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2026, the foregoing document was filed through the CM/ECF system which will send notification of such filing to all registered participants.

*/s/Thomas Scolaro*
Thomas Scolaro

14