UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MOUNIA EL-ARAR, as Personal Representative
of the Estate of WAFAE EL-ARAR, ET AL.

Plaintiffs,

CIVIL ACTION NO.: 1:26-cv-10534

v.

ROYAL KAHAL RESORT LTD., ET AL.

Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT NAVIEN, INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS


**STATEMENT OF FACTS ........................................................................................................1**

**STANDARD OF REVIEW ...................................................................................................4**

**I. THE COMPLAINT PLAUSIBLY ALLEGES A CLAIM FOR FAILURE TO WARN ..................................................................................................................................5**

**II. THE COMPLAINT PLAUSIBLY ALLEGES A CLAIM FOR NEGLIGENT UNDERTAKING ……………………………………………………………………………………………..14**

**III. THE COMPLAINT PLAUSIBLY ALLEGES A BREACH OF THE WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE..................................................................................................................15**

**CONCLUSION…………………………………………………………………………………..18**

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 8,14
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 5,14
*Burleigh v. Alfa Laval, Inc.*, 313 F. Supp. 3d 343 (D. Mass. 2018) ........ 7
*Colter v. Barber-Greene Co.*, 403 Mass. 50 (Mass. 1988) ........ 11,12
*Doull v. Foster*, 487 Mass. 1 (Mass. 2021) ........ 7
*Erickson v. Pardus*, 551 U.S. 89 (2007) ........ 5
*Evans v. Lorillard Tobacco Co.*, 465 Mass. 411 (Mass. 2013) ........ 5,8
*Frappier v. Countrywide Home Loans, Inc.*, 750 F.3d 91 (1st Cir. 2014) ........ 5
*Kent v. Commonwealth*, 437 Mass. 312 (Mass. 2002) ........ 10,11
*Kiribati Seafood Co., LLC v. Dechert LLP*, 478 Mass. 111 (Mass. 2017) ........ 9,10
*Lama-Wolobah v. Paqui, LLC*, 2026 U.S. Dist. LEXIS 72622 (D. Mass. Mar. 31, 2026) ..... 12,13
*Liberty Mut. Ins. Co. v. Broan-NuTone LLC*, 731 F. Supp. 3d 205 (D. Mass. 2024) ........ 16,17
*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011) ........ 8
*Public Serv. Mut. Ins. v. Empire Comfort Sys.*, 573 F. Supp. 2d 372 (D. Mass. 2008) ........ 11,12
*Regina Grape Prods. Co. v. Supreme Wine Co.*, 357 Mass. 631 (Mass. 1970) ........ 16,17
*Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49 (1st Cir. 2013) ........ 5
*Softub, Inc. v. Mundial, Inc.*, 53 F. Supp. 3d 235 (D. Mass. 2014) ........ 17
*Solimene v. B. Grauel & Co.*, 399 Mass. 790 (Mass. 1987) ........ 8
*Taupier v. Davol*, 490 F. Supp. 3d 430 (D. Mass. 2020) ........ 11
*Thorson v. Mandell*, 402 Mass. 744 (Mass. 1988) ........ 14
*Werner v. Zipcar, Inc.*, 2025 Mass. App. Unpub. LEXIS 307 (Mass. App. Ct. May 1, 2025) ........ 15

## STATUTES & RULES

Mass. Gen. Laws ch. 106, § 2-315 ........ 16
Fed. R. Civ. P. 8(a) ........ 14
Fed. R. Civ. P. 8(a)(2) ........ 4
Fed. R. Civ. P. 8(e)(2) ........ 13
Fed. R. Civ. P. 12(b)(6) ........ 4,5,8

## INTRODUCTION

On or about February 20, 2025, three young women from Massachusetts, Wafae El-Arar, Kaoutar Naqqad, and Imane Mallah, died at the Royal Kahal Resort when they were overcome by carbon monoxide emanating from the Navien NPE 210S water heater in their suite. On February 20, 2026, their estates brought suit against Navien asserting multiple claims, including failure to warn (Count V), negligent undertaking (Count VI) and breach of warranty of fitness for a particular purpose (Count VIII). On May 15, 2026, Navien filed a 12 (b) 6 motion to dismiss these claims. Navien's motion is without merit for the following reasons.

## STATEMENT OF FACTS

Navien is a manufacturer of high efficiency tankless water heaters and is one of the leading suppliers of tankless gas water heaters in the United States and throughout the world. Compl. ¶67. Navien first introduced its model NPE-210S water heater in 2013. Compl. ¶68. It was designed as a wall mounted unit that could be installed indoors or outdoors and featured a forced-draft direct vent configuration. *Id*. It works by pulling air through a dedicated intake vent, mixing it with burning gas in the heat exchanger and then expelling the combustion gases, including carbon monoxide, though an exhaust vent that usually terminates outdoors through a wall or roof. Compl. ¶69. The NPE-210S had no integral Oxygen Depletion Sensor (ODS) or an automatic shut-off switch to detect dangerous carbon monoxide levels or improper combustion, despite that fact that the technology was readily available years before the subject NPE-210S left Navien's control. Compl. ¶70. Navien was aware that alternative designs were available that would have

made the NPE-210S reasonably safe. Compl. ¶72. Navien designed the NPE-210S to operate with either natural gas (NG) or liquid propane gas (LPG), however it left Navien preconfigured for natural gas. Compl. ¶79.

The Consumer Product Safety Commission (CPSC) has issued two separate recalls of similar Navien water heaters. Compl. ¶75. On December 27, 2011, CPSC issued a recall entitled "Navien Recalls Tankless Water Heaters Due to Risk of Carbon Monoxide Poisoning." Compl. ¶76. On December 20, 2018, CPSC issued a recall entitled "Navien Recalls Tankless Water Heaters and Boilers Due to Risk of Carbon Monoxide Poisoning." Compl. ¶77. At that time, CPSC noted that "A kit installed on the tankless water heaters and boilers to convert them from natural gas to propane can cause the unit to produce excessive amounts of carbon monoxide, posing a risk of carbon monoxide poisoning to consumers." Id.

Navien shipped the NPE-210S to the Royal Kahal Resort in Belize pre-configured for NG. Compl. ¶¶79, 102. Belize had no infrastructure for NG. Compl. ¶102. LPG was the only gas in use and available at the Royal Kahal Resort. *Id*. To operate the NPE-210S with LPG, a conversion kit must be used to ensure safe and efficient combustion. Compl. ¶79. If an NPE-210S configured for NG is connected to LPG, it can "over fire" and produce excessive amounts of carbon monoxide with deadly results. Compl. ¶80.

The NPE-2120S was shipped in a box on which Navien states "One person installation" with no further indication that the installer needs specialized training or qualification. Compl. ¶81. An unqualified installer would not encounter the NG to LPG conversion kit as it is packaged inside the NPE-210S unit. Compl. ¶82. In fact, to find the

conversion kit, an installer must partially disassemble the NPE-210S by removing several screws and then removing the unit's front panel. Compl. ¶83. Removal of the front panel of the Navien NPE-210S is not necessary for the installation of the unit, so an unqualified installer could simply install the unit, albeit improperly, without ever seeing the conversion kit. Compl. ¶85. The exterior of the box is devoid of any indication that there is a conversion kit located inside the unit and is also devoid of any indication that the unit must be converted before use with LPG. Compl. ¶84. Inserting the NPE-210S's intake pipe and exhaust pipe to the proper depth takes an extraordinary amount of force and it is critical that the pipes are inserted to the correct depth. Compl. ¶86. Loose connections on the NPE-210S and insufficient ventilation can cause carbon monoxide poisoning. Compl. ¶87.

The consequences for improper installation of Navien's water heaters are dire. Compl. ¶88. Prior to the incident at Royal Kahal, Navien had known for years that unqualified workers were regularly installing its water heaters and was aware of multiple deaths resulting from improper installation of its water heaters by unqualified workers. *Id.* On February 21, 2019, a man in New York died from carbon monoxide poisoning, and his wife nearly died, after he failed to perform the necessary gas conversion from NG to LPG on a Navien water heater prior to use. Compl. ¶90. In April of 2019, a husband and wife in Ohio and their two young children died from carbon monoxide poisoning after the husband improperly installed a Navien water heater. Compl. ¶91.On December 7, 2019, a Corporal in the Indiana National Guard died from carbon monoxide poisoning

after an unqualified handyman failed to perform the necessary gas conversion from NG to LPG on a Navien water heater. Compl. ¶92.

During development of Royal Kahal, Navien undertook the obligation to provide consulting services, support and assistance to the developer defendants including assistance with product selection and guidance on installation and design. Compl. ¶99. Navien also undertook the obligation to train and certify technicians to properly install its products. Compl. ¶100. Navien then failed to take any steps to learn whether the water heaters at Royal Kahal were installed correctly. Compl. ¶101. Navien sent the NPE-210S units to Belize pre-configured for the wrong gas. Compl. ¶102. Belize is a third world country where safety regulations were not enforced and where safety inspections were cursory or non-existent. Compl. ¶104. The subject Navien NPE-210S was installed at the Royal Kahal Resort by an unqualified handyman, Jeff Mulholland, as his company Belize Metal Works Ltd. Compl. ¶¶65,66. Thereafter, Wafae El-Arar, Kaoutar Naqqad, and Imane Mallah, died in their suite at the Royal Kahal Resort when they were overcome by carbon monoxide emanating from the Navien NPE 210S. Compl. ¶1.

**STANDARD REVIEW**

Federal Rule of Civil Procedure 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Fed. R. Civ. P. 12(b)(6)*. To withstand a motion to dismiss under Rule 12(b)(6), a complaint must allege a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Rodriguez-Reyes v. Molina-*

*Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013). Along with all well-pleaded facts, the Court must draw all logical inferences from a complaint in favor of the plaintiff. *Frappier v. Countrywide Home Loans, Inc.*, 750 F.3d 91, 96 (1st Cir. 2014). The plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

## ARGUMENT

### I. The Complaint plausibly alleges a causal connection between Navien's failure to warn and the Plaintiffs' deaths.

"Even if a product is properly designed, it is unreasonably dangerous and, therefore, it is not fit for the purposes for which such goods are used, if foreseeable users are not adequately warned of the dangers associated with its use." *Evans v. Lorillard Tobacco Co.*, 465 Mass. 411 (Mass. 2013).

In their Complaint, the Plaintiffs allege that Navien was aware that its NPE-210S water heaters were deadly if not properly installed and properly converted by qualified installers (Compl. ¶120); that Navien was aware that its units were frequently installed by unqualified installers (Compl. ¶93); that there were prior deaths associated with improper installation and conversion of its units by unqualified installers (Compl. ¶¶88,90, 91, 92); that despite this knowledge by Navien the NPE-210S was shipped in a box on which Navien stated that it was suitable for "one person installation" with no indication that the installer needed specialized training or qualification (Compl. ¶155); that the conversion kit on the unit was essentially hidden inside the unit and would not have been readily apparent or accessible to an unqualified installer (*Id.*); that there were

inadequate and insufficient warnings to alert an unqualified installer that the NPE-210S needed to be converted (Compl. ¶147); that Navien shipped the NPE-210S to the Royal Kahal Resort configured for NG, although it new or should have known that NG was not available to resorts in Belize (Compl. ¶102); that it sent units configured for the wrong gas to a third world country where it knew there are no safety regulations or inspections (Compl. ¶104); that the intake and exhaust pipes on the NPE-210S have to be seated to the proper depth, which takes an extraordinary amount of force (Compl. ¶86); that there were inadequate and insufficient warnings to alert an unqualified installer that the NPE-210S intake and exhaust pipes needed to be seated at the proper depth (*Id.*); that loose connections on the NPE-210S and improper ventilation can cause carbon monoxide poisoning (Compl. ¶87); that there were inadequate and insufficient warnings to alert an unqualified installer to the dangers posed by loose fittings and improper ventilation of the NPE-210S (Compl. ¶86); that it was foreseeable to Navien that shipping the NPE-210S configured for the wrong gas would cause deaths by carbon monoxide poisoning given its inadequate warnings and Navien's knowledge that its water heaters were routinely installed by unqualified installers (Compl. ¶¶103,104); that the subject NPE-210S in the Plaintiffs' suite at Royal Kahal Resort was in fact installed by an unqualified installer (Compl. ¶¶64, 65); that Jeffrey Mulholland and his associates at Belize Metal Works Limited improperly installed the Navien NPE-210S unit and/or failed to perform the necessary NG to LPG conversion on the Navien NPE-210S unit in the Plaintiffs' suite at Royal Kahal (Compl. ¶110), and; that as a result of the foregoing, the Plaintiffs were overcome with carbon monoxide and died (Compl. ¶111).

Nevertheless, Defendant Navien argues that Plaintiffs failed to plausibly state a claim for failure to warn of the risks associated with unqualified installation of the NPE-210S. Navien states that the Plaintiffs have "plead facts precluding" the possibly that inadequate warnings caused the Plaintiffs' death. It posits that because Plaintiffs alleged that the developer defendants hired unqualified workers to install the NPE-210S, that Navien is therefore not liable for failing to warn of the dangers associated with unqualified workers improperly installing the NPE-210S.

However, Navien fails to appreciate that both Navien and the developer defendants can be found liable for the Plaintiffs' damages. See *Burleigh v. Alfa Laval, Inc.*, 313 F. Supp. 3d 343 (Mass. Dist. 2018) (providing that Massachusetts's regime of joint and several liability allows a plaintiff injured by more than one tortfeasor to sue any or all of them for full damages). See also *Doull v. Foster*, 487 Mass. 1, 12 (Mass. 2021) providing "One source of confusion is the mistaken belief that there can only be a single but-for cause of harm."

Navien's argument incorrectly assumes that the developer defendants hiring of unqualified workers was a *superseding* cause of the improper installation of the NPE-210S which cut off Navien's liability for failure to warn. In effect, Navien argues that the hiring of unqualified workers broke the casual chain between Navien's failure to warn (of the risks of improper installation of the NPE-210S by unqualified workers) and the subsequent improper installation of the NPE-210S by unqualified workers and resulting deaths. However, the hiring of unqualified workers to install the NPE-210S was not a

superseding cause, it was a materialization of the *exact risk* that adequate warnings would have prevented: improper installation by unqualified workers.

Navien wants the Court to infer that the developer defendants, or the unqualified workers, would not have read adequate warnings or instructions had they been given. However, when deciding a Rule12(b)(6) motion, the court is required to construe a complaint in the light most favorable to the plaintiff and draw all reasonable inferences in favor of the plaintiff. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1,17 (1st Cir. 2011). It is reasonable to infer and is certainly plausible that adequate warnings would have alerted the developer defendants to the dangers associated with unqualified workers installing the NPE-210S and that the unqualified workers themselves would not have attempted to install the unit if they were adequately warned. The presumption is that adequate warnings would have been heeded. See *Evans v. Lorillard Tobacco Co*., 465 Mass. 411 (Mass. 2013).

At most, the hiring of unqualified workers was an *intervening* and *concurrent* cause giving rise to joint and several liability, but that issue should be decided by a jury. See *Solimene v. B. Grauel & Co*. 399 Mass. 790, 794 (Mass 1987) proving that "Generally, questions of causation, proximate and intervening, present issues for the jury to decide."

In *Solimene*, the plaintiff brought a breach of warranty claim against the manufacturer of an industrial machine which caused her injury. *Id* at 790. The evidence in that case showed that Plaintiff's employer owned the machine for nine years and was aware of its particular risks. *Id* at 795. The manufacturer argued that the employer was in a better position to make the machine safe for use. *Id*. However, the Massachussetts

Supreme Judicial Court noted that "whether a third party is in a better position to prevent harm to another is not determinative of the issue of superseding cause." *Id*. "The test…is not in the number of intervening events or agents, but in their character and in the natural and probable connection between the wrong done and the injurious consequences." *Id* at 796.

The Court observed that although the employer gave the plaintiff few instructions as to the proper use of the machine, the evidence indicated that the manufacturer did not give the employer any warnings as to the proper use of the machine and that the employer's use of the product was therefore foreseeable. *Id*. The Court found that "As a general rule, a tortfeasor is liable for the foreseeable intervening conduct of a third party whether that conduct is negligent or not." *Id*. The Court recognized that the manufacturer as the designer of the product was in the best position to eliminate the harm. *Id*.

Likewise, in *Kiribati Seafood Company, LLC., v. Dechert LLP.*, 478 Mass. 111 (Mass. 2017), the issue at bar was whether *Dechert*'s liability for legal malpractice was cut off by a subsequent judicial error. In finding *Dechert* liable, the Court recognized that "a plaintiff's loss need not have only one proximate cause; there can be multiple proximate causes." *Id* at 119. It observed that: "a superseding cause is a new and independent cause that intervenes between original wrong and final injury and "thus destroys any causal connection between the defendant's negligence and the plaintiff's harm, precluding the plaintiff from establishing the defendant's negligence as a proximate cause" *Id*. "But where the intervening cause is reasonably foreseeable and the [original tortfeasor] could have taken reasonable steps to prevent or mitigate the anticipated harm, the intervening

cause is a ‘concurring cause’ that leaves the causal link between the defendant's negligence and the plaintiff's harm unbroken.” *Id*. If the subsequent error was reasonably foreseeable at the time of defendant’s alleged negligence, the error is a concurring cause as opposed to a new and independent or superseding cause. *Id*. In the present case, it was certainly foreseeable that failing to warn of the risk of improper installation of the NPE-210S by unqualified workers, would result in unqualified workers improperly installing the NPE-210S.

In its motion, the Defendant cites to *Kent v. Commonwealth*, 437 Mass. 312 (Mass. 2002). In *Kent*, a police officer was shot by a convicted murderer who had been paroled by the Commonwealth to the custody of INS for deportation eight years prior to the shooting. *Id* at 313. After the transfer, INS determined that the prisoner was s U.S. citizen and released him from custody in the U.S. *Id* at 314. The Commonwealth successfully argued that by transferring the prisoner to INS’s custody, the duty to prevent harm shifted from the Commonwealth to INS such that when INS later decided that the prisoner was a U.S. citizen and released him, the causal link between the earlier decision to parole the prisoner to INS and the subsequent shooting was broken. *Id* at 321. The Court noted that deciding the issue of causation at the motion to dismiss stage was the exception rather than the rule but found that no set of facts could support a conclusion that the Commonwealth’s decision to parole the prisoner to INS for deportation in 1987 was the proximate cause of prisoners subsequent release in the United States and the 1995 shooting. *Id*.

*Kent* is distinguishable from the present case. In *Kent* there was a transfer of duty from the Commonwealth to INS. Further, it was not foreseeable to the Commonwealth that transferring a prisoner to INS for deportation would result in that prisoner instead being released on the streets of the United States. In the present case, there was no transfer of Navien's duty to warn. As the manufacturer of the NPE-210S, Navien was under a duty to warn persons who foreseeably will come in contact with the product. See *Colter v. Barber-Greene Co.*, 403 Mass. 50, 59 (Mass 1998). Likewise, it was certainly foreseeable that failing to warn of the dangers associated with improper installation of the NPE-210S by unqualified works would in fact lead to improper installation of the NPE-210S by unqualified workers.

Navien also cites to *Taupier v. Davol*, 490 F. Supp. 3d 430 (D. Mass. 2020), in which the court dismissed the Plaintiffs failure to warn claim in a medical device case where the plaintiff failed "to offer any description of the warnings and instructions that Defendant provided or should have provided to his physician." *Id* at 447. The court found the plaintiff's allegations conclusory and insufficient. *Id*. By contrast, the Plaintiffs in this case alleged have alleged in detail what instructions were provided and what warnings should have been provided. See Compl. ¶¶ 95, 96, 152.

Navien cites to *Public Serve. Mut. Ins. v. Empire Comfort Sys.*, 573 F. Supp. 2d 372 (D. Mass. 2008) in which the court granted summary judgment on a duty to warn claim because the danger was open and obvious. *Id* at 379. In the present case, by contrast, the danger was not open and obvious as alleged in the Complaint. See Compl. ¶ 142. The court in *Empire* cited *Colter* supra., as stating that a manufacturer has no duty to warn

where a plaintiff is fully aware of the risks posed by a product. *Id* at 65. In that case, summary judgment was denied where the plaintiff admitted to knowing of the dangerous condition of the product but was unaware that it needed a safety guard. *Id* at 52. Here there is no evidence that the developer defendants or Jeffrey Mulholland or Belize Metal Works, Ltd., were fully aware of the risks associated with improper installation of the NPE-210S by unqualified workers.

Finally, Defendant Navien cites *Lama-Wolobah v. Paqui, LLC.*, 2026 U.S. Dist. Lexis 72622 (D. Mass. March 31, 2026), where the plaintiff sued the makers of a tortilla chip which was intentionally seasoned with extremely hot peppers. *Id* at *3. The chip was the subject of a "viral" social media trend called the "One-Chip Challenge," which dared participants to film themselves consuming the exceptionally spicy chip and attempt to resist consuming any beverage or food after consumption that might offset the body's natural response to eating a hot pepper chip. *Id* at *4. Many videos of individuals participating in the OCC exist online, where people begin crying, turning red, choking, vomiting, fainting, and needing to drink water or milk. Id. The OCC chip was packaged inside of a small box that resembled a coffin, the front side of the box depicted a cartoonish skull and fanged snake, and the interior of the box depicts a cartoonish "Grim Reaper" figure which states, "Face the Reaper" and, "Any last Words?" *Id*. The plaintiff brought claims under multiple theories including failure to warn.

In the complaint, the plaintiff alleged that warnings and chip's packaging were both an enticement to risk-seeking youth and also deficient for failing to adequately warn of the dangers associated with the product. *Id* at *36. The Court dismissed the failure to

warn claim and reasoned that the plaintiff cannot argue that the warnings were so deficit that the teenage boys in this action could not have perceived the danger of the product and simultaneously argue that the existing warnings were an enticement to the danger. *Id* at *38. It noted that the facts alleged did not support a cognizable legal theory presented by the plaintiffs. *Id*.

*Lama-Wolobah* is also distinguishable. In *Lama-Wolobah,* the court found that the allegations directed at the manufacturing defendants were contradictory and could not be reconciled. Here the Plaintiffs allege that Navien failed to warn of the dangers of improper installation of the NPE-210S by unqualified workers and that unqualified workers were then hired by the developer defendants to install the NPE-210S. There is no contradiction. Further, Rule 8 subsection (e)(2) provides that: "A Party may set forth two or more statements of a claim or defense alternatively or hypothetically…" and "If a party makes alternative statements, the pleading is sufficient of any one of the is sufficient." and "A party may state as many separate claims or defenses as it has, regardless of consistency." *Fed R. Civ. P. 8(e)(2)*.

Finally, Navien mentions that the Plaintiffs "do not assert in greater detail" how the unqualified workers improperly installed the NPE-210S. However, the Plaintiffs have not had the benefit of discovery. They alleged that "Jeffrey Mulholland and his associates at Belize Metal Works Limited improperly installed the Navien NPE-210S unit and/or failed to perform the necessary NG to LPG conversion on the Navien NPE-210S."Compl. ¶ 110. The Plaintiffs also identified several ways in which improper installation can occur if performed by unqualified workers. See Compl. ¶¶80, 86, 87. Rule 8 requires "a short

plain statement showing the pleader is entitled to relief." *Fed. R. Civ. P. 8(a).* Under the *Iqbal* and *Twombly* notice pleading standard, the Plaintiffs are not required to plead with specificity, they are only required to give fair notice of the claim and the grounds upon which it rests. Based on the foregoing, Navien's motion to dismiss should be denied as to Count V.

## II. The Complaint plausibly alleges that Navien negligently performed their undertaking.

In Massachusetts, if a person voluntarily assumes a duty or undertakes to render services to another that should have been seen as necessary for her protection, that person may be liable for harm caused because of the negligent performance of his undertaking. *Thorson v. Mandell*, 402 Mass. 744, 748 (Mass. 1988).

Navien concedes, as it must, that it undertook to train and certify FT Williams & Co.'s technicians. However, it argues that the scope of its undertaking was limited to training and certifying FT Williams & Co.'s technicians only. By contrast, the Plaintiffs alleged in their Complaint that during the development of Royal Kahal Resort, Navien undertook the obligation to provide consulting services, support and assistance to the developer defendants including assistance with product selection and guidance on installation and design (Compl. ¶¶99,159); that the developer defendants relied on Navien to perform such services and guidance such that NPE-210S units would be correctly installed (Compl. ¶160); that Navien then sent the NPE-210S configured for the wrong gas and without adequate instructions and warnings and failed to ensure that the NPE-210S was installed and vented correctly. (Compl. ¶¶ 102,103,104,162, ).

Navien cites to *Werner v. Zipcar, Inc.*, 2025 Mass. App. Unpub. Lexis 307 (Mass. App. Ct. May 1, 2025), which is an unpublished decision that was decided at the summary judgment stage on a fully developed factual record. *Id* at *5. Navien argues that the "specific task" language in that case narrows the scope of its duty to training and certifying FT Williams & Co.'s employees only. At most, *Werner* confirms that the scope of an assumed duty is measured by the task actually undertaken. *Id* at *4. In this case, Navien argues that it was tasked with training and certify technicians. The Plaintiffs argue that Navien's scope of assumed duties also included providing consulting services, support and assistance to the developer defendants, including assistance with product selection and guidance on installation and design. As a result, there is a factual dispute about the scope of Navien's undertaking that cannot be resolved before discovery and should not be resolved on the pleadings. Therefore, Navien's motion to dismiss should be denied as to Count VI.

**III. The Complaint plausibly alleges that Navien breached its warranty of fitness for a particular purpose**

The warranty of fitness for a particular purpose is similar to the warranty of merchantability but applies only "where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." See *ALM GL ch. 106, §2-315.* In its motion, Navien makes two agreements directed at Count VIII, (i). That the plaintiffs have not pled that the water heater was to be used for a particular

purpose, and (ii). That the particular purpose was not communicated to Navien prior to the sale of the water heater.

In their Complaint, the Plaintiffs allege that Navien agreed to provide consulting services, support and assistance to the developer defendants including assistance with product selection and guidance on installation and design (Compl. ¶99); that the developer defendants relied on Navien to perform such services and guidance (Compl. ¶160); that Navien knew or should have known that Belize had no infrastructure for NG and there was no NG service on Ambergris Caye where Royal Kahal is located (Compl. ¶102); that LPG is the only gas available to royal Kahal (Id.); that Navien knew or had reason to know of the particular purpose for which the product was required (Compl. ¶174); that Navien sent water heaters configured for natural gas when the developer defendants required water heaters configured for Liquid Propane Gas (Compl. ¶179); that the product was not fit for such purpose (Compl. ¶¶80,175); resulting in Plaintiffs' injuries and damages (*Id.*). As a result, the Plaintiffs have properly alleged, and the Court can reasonably infer, that Navien was aware of the particular purpose for which the developer defendants intended to use the water heater.

Navien cites two cases, *Liberty Mut. Ins. Co. v. Broan-NuTone LLC,* 731 F. Supp. 3d 205, 220 (D. Mass. 2024), in which the court found that there was no particular purpose where a ceiling fan was to be used for its ordinary purpose as a ceiling fan; and *Regina Grape Prods. Co. v. Supreme Wine Co.,* 357 Mass. 631, 634 (1970) in which the court found that the warranty of fitness for a particular purpose was breached where the plaintiff relied on and trusted the judgement of the wine manufacturer who knew of the particular

purpose for which the wine was to be used and thereafter provided the incorrect type of wine. However, both *Broan* and *Regina* were decided at the summary judgment stage, on their full evidentiary record.

Navien makes the additional argument that the Plaintiffs failed to allege "specifics as to any communications" between Navien and FT Williams & Co., or Navien and the developer defendants. For support it cites to *Broan* supra., which states, "there is no implied warranty of fitness for a particular purpose unless the **purchaser communicates the particular purpose** he has in mind for the product to the seller." (Emphasis added). But this is dicta. *Broan* also states that implied warranty of fitness for a particular purpose exists 'where the **seller** …**has reason to know** any particular purpose for which the goods are required…' which mirrors the language in the statute. (Emphasis added). See also *Softub, Inc. v. Mundial, Inc.*, 53 F. Supp 3d 235, 253 (D. Mass. 2014).

Whether the Plaintiffs ultimately have to show that Navien had a "reason to know" of the particular purpose for which the water heater was intended, or that the particular purpose was "specifically communicated" to Navien is immaterial at the pleading stage. The Plaintiffs should not be required to allege the details of specific communications or transactions about which they could not possibly know without the benefit of discovery.

## CONCLUSION

The Plaintiffs' Complaint states plausible claims for failure to warn, negligent undertaking, and breach of warranty for fitness for a particular purpose. For the

foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Navien's Motion to Dismiss in its entirety.

Respectfully submitted this 27th day of July 2026.

**SCOLARO LAW**

/s/ Billy Rieder
Thomas Scolaro
Florida Bar No.: 178276
William T. Rieder, Jr.
Florida Bar No. 0044834
1728 Coral Way, Suite 702
Miami, Florida 33145
(305) 424-2300 Telephone
(305) 424-2140 Facsimile
tom@usinjury.law
billy@usinjury.law
barbie@usinjury.law
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2026, the foregoing document was filed through the CM/ECF system which will send notification of such filing to all registered participants.

/s/ Billy Rieder
William Thomas Rieder, Jr.