UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MOUNIA EL-ARAR, as Personal Representative of the Estate of WAFAE EL-ARAR, NISRINE NAQQAD, as Personal Representative of the Estate of KAOUTAR NAQQAD, and ZINEB ELGHILANI, as Personal Representative of the Estate of IMANE MALLAH,<br><br>Plaintiffs,<br><br>v.<br><br>ROYAL KAHAL RESORT LTD.,<br>FAIRHAVEN PROPERTIES, INC.,<br>MICHAEL FAIRBAIRN,<br>WENDY FAIRBAIRN,<br>DAVID FAIRBAIRN,<br>JOHN DOE,<br>JEFFREY MULHOLLAND,<br>BELIZE METAL WORKS COMPANY LIMITED,<br>STRUKTURE ARCHITECTS LIMITED,<br>ANNA MARIA ESPAT,<br>NAVIEN, INC.,<br>ANCA INTERNATIONAL CORPORATION,<br>ANCA GLOBAL HOLDINGS LLC,<br>GLOBAL CAPITAL MOBILITY, INC. and<br>EXPEDIA, INC.,<br><br>Defendants. | CIVIL ACTION NO.: 1:26-cv-10534 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS ROYAL KAHAL RESORT LTD., FAIRHAVEN PROPERTIES, INC., MICHAEL FAIRBAIRN, WENDY FAIRBAIRN, AND DAVID FAIRBAIRN'S MOTION TO DISMISS FOR FORUM NON CONVENIENS**

## TABLE OF CONTENTS

INTRODUCTION .......... 1
RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .......... 2
I. The Parties. .......... 2
II. The Resort and Its Construction. .......... 3
III. The Incident. .......... 4
IV. Procedural History. .......... 4
ARGUMENT .......... 5
I. This Motion Is Timely and Properly Before the Court. .......... 5
A. Common Law Forum Non Conveniens Is Not Subject to Rule 12 Waiver. .......... 5
B. This Motion Is Brought at the Earliest Practicable Opportunity. .......... 6
II. Legal Standard. .......... 6
III. Belize Is an Adequate Alternative Forum. .......... 7
A. All Parties Can Come Within Belizean Jurisdiction. .......... 7
B. Belize Provides Adequate Remedies. .......... 7
IV. Private and Public Interest Factors Strongly Favor Belize. .......... 8
A. The Private Interest Factors Favor Belize. .......... 8
B. The Public Interest Factors Favor Belize. .......... 11
V. The Concurrent Canadian Action Further Supports Dismissal. .......... 12
A. Moving Defendants Request that the Court Take Judicial Notice of the Canadian Action. .......... 12
B. The First Circuit Permits Courts to Draw Logical Inferences from Concurrent Foreign Proceedings. .......... 14
C. The Canadian Action Reinforces that Belize is the Proper Forum. .......... 15
CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelson v. Hananel*,
510 F.3d 43 (1st Cir. 2007)....................14

*Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
571 U.S. 49 (2013)....................6

*Curtis v. Galakatos*,
19 F.4th 41 (1st Cir. 2021)....................6, 8, 9, 10

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947)....................9, 11

*Heng Ren Invs. LP v. Sinovac Biotech Ltd.*,
542 F. Supp. 3d 59 (D. Mass. 2021)....................5

*Kowalski v. Gagne*,
914 F.2d 299 (1st Cir. 1990)....................13

*Nandjou v. Marriott Int'l*, *Inc.*,
CV No. 18-CV-12230-ADB, 2019 WL 2918043 (D. Mass. Jul. 8, 2019)....................5

*Neelon v. Krueger*,
63 F. Supp. 3d 165 (D. Mass. 2014)....................5

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981).................... *passim*

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007)....................5, 6

*Sysco Machinery Corp. v. Cymtek Solutions, Inc.*,
124 F.4th 32 (1st Cir. 2024).................... *passim*

*Textron Fin. Corp. v. Oakboro Tractor & Equip.*,
C.A. No. 09-085S, 2010 WL 608536 (D.R.I. Feb. 18, 2010)....................6

*Watterson v. Page*,
987 F.2d 1 (1st Cir. 1993)....................13

**Other Authorities**

Fed. R. Civ. Pro.12....................4, 5, 6

Fed. R. Evid. 201(b)(2) ........................................................................................................13

Fed. R. Evid. 201(c)(2) ........................................................................................................13

Fed. R. Evid. 201(d)............................................................................................................13

U.S. Department of State's 2023 Country Report on Human Rights Practices for Belize, https://www.state.gov/reports/2023-country-reports-on-human-rights-practices/belize/..........................................................................................................8

# INTRODUCTION

This case arises from the tragic deaths of three individuals from alleged carbon monoxide poisoning at a resort in Belize, a country thousands of miles from this Court. Every meaningful aspect of this dispute, including the core events, physical evidence, and regulatory interests, is rooted in Belize. The Resort[1] where the deaths occurred is in Belize. The water heater and venting system at issue are in Belize. The relevant design, construction, installation, and governmental investigation occurred in Belize. The contractors who performed the water heater installation are Belizean. The architects who designed the Resort building are Belizean. The investigators who examined the scene are Belizean. And the building codes that govern construction are Belizean. Not a single act of alleged negligence took place in Massachusetts.

The Moving Defendants, comprised of a Belizean resort company, a Canadian parent company, and three Canadian individuals, have no presence in Massachusetts. This action should be dismissed under the common law doctrine of *forum non conveniens* because Belize is both an adequate alternative forum and overwhelmingly the most appropriate venue to adjudicate claims arising from an incident on Belizean soil, involving Belizean and Canadian parties, and governed by Belizean law.

The private interest factors, including access to the Belizean Resort and suite at issue, the water heater, the government-held investigative materials, Belize-based witnesses, the availability of compulsory process in Belize, and the ability to implead responsible third parties, all favor Belize. The public interest factors, including Belize's sovereign interest in regulating resort safety

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in *Defendants Royal Kahal Resort Ltd., Fairhaven Properties Inc., Michael Fairbairn, Wendy Fairbairn, and David Fairbairn's Motion to Dismiss, or in the Alternative, to Transfer for Forum Non Conveniens* (the "**Motion to Dismiss**") filed concurrently herewith.

on its own soil, the applicability of Belizean law, including construction, licensing, safety, and tourism requirements, and the unfairness of burdening Massachusetts jurors with an entirely foreign controversy, compel the same result. Meanwhile, the presumption favoring Plaintiffs' choice of forum applies with diminished force because the injuries occurred entirely abroad, and at least one Plaintiff resides not in Massachusetts but in North Carolina.

For these reasons, and the reasons set forth more fully herein, this Court should dismiss this action pursuant to *forum non conveniens* in favor of the Belizean courts.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### I. The Parties.

Plaintiffs Mounia El-Arar, Nisrine Naqqad, and Zineb Elghilani (collectively, "Plaintiffs") bring this action as personal representatives of the estates of the Decedents. (ECF 1, ¶¶1, 4-6). Plaintiff Mounia El-Arar is a resident of North Carolina; the remaining Plaintiffs are residents of Massachusetts. (*Id*. at ¶¶4-6).

Royal Kahal is a corporation organized under the laws of Belize with its principal place of business in San Pedro, Ambergris Caye, Belize. (ECF 1, ¶7; ECF 51-1, ¶2). Royal Kahal is wholly owned by Fairbairn Holdings, Inc., a Canadian corporation. (ECF 61). Royal Kahal has no offices, employees, property, or bank accounts in Massachusetts. (ECF 51-1, ¶3). It is not registered to do business in Massachusetts. (*Id*. at ¶4).

Fairhaven Properties is a Canadian corporation organized under the laws of Ontario with its principal place of business in Chatham, Ontario, Canada. (ECF 1, ¶8; ECF 53-1, ¶2). Fairhaven has no presence in Massachusetts and had no communications or other involvement with the Decedents. (ECF 53-1, ¶¶3-5, 10).

Michael Fairbairn is a citizen of Ontario, Canada. (ECF 1, ¶9; ECF 55-1, ¶2). All of his activities relating to Royal Kahal and the Resort took place in Belize and Ontario. (ECF 55-1, ¶¶3, 10). He did not communicate or otherwise interact with the Decedents. (*Id*. at ¶5). He has no connection to Massachusetts. (*Id*. at ¶¶7-9).

Wendy Fairbairn is also a citizen of Ontario, Canada. (ECF 1, ¶10; ECF 59-1, ¶2). Similarly, all of her activities relating to Royal Kahal and the Resort took place in Belize and Ontario. (ECF 59-1, ¶¶3, 9). She did not communicate or interact with the Decedents. (*Id*. at ¶5). She has no connection to Massachusetts. (*Id*. at ¶¶6-9).

David Fairbairn is a citizen of Nova Scotia, Canada. (ECF 57-1, ¶2). He served as the on-site construction liaison for the Resort from approximately November 2017 through March 2020. (*Id*. at ¶5). However, he departed Belize before the Resort was completed and before the water heaters at issue were installed. (*Id.*). He did not communicate or interact with the Decedents, has never been to Massachusetts, and has no connection to Massachusetts. (*Id*. at ¶¶8-11).

## II. The Resort and Its Construction.

The Resort is located in San Pedro, Ambergris Caye, Belize. (ECF 1, ¶¶1, 27, 42-43). The relevant construction, design, contractor, and water heater installation activities and related project records are in Belize. *See* Declaration of Edmund Andrew Marshalleck, attached hereto as Exhibit "1" ("Marshalleck Decl.") at ¶¶19-21, 26-28. Construction of the Resort began in 2018. (ECF 1, ¶61). The developers initially retained FT Williams & Associates to manage construction but terminated that engagement. (*Id*. at ¶¶62, 65). Thereafter, the developers hired Jeffrey Mulholland and his company, Belize Metal Works Company Limited, to perform construction work, including the installation of the subject water heaters. (*Id*. at ¶65). Mulholland and Belize Metal Works allegedly lacked appropriate qualifications for this specialized installation work. (*Id*. at ¶¶65-66).

The Resort's architectural design was performed by Strukture Architects and Anna Maria Espat, both based in Belize. (*Id*. at ¶¶15-16). All construction decisions, contractor selections, and building activities occurred in Belize, subject to Belizean building codes and regulations. (Marshalleck Decl., ¶¶18, 22-23).

**III. The Incident.**

The Decedents booked their stay at the Resort through Expedia, Inc., an independent third-party online travel platform. (ECF 1, ¶¶32-33; ECF 49, ¶¶7-8). Royal Kahal received payment from Expedia in Canada. (ECF 49, ¶9). The only communications between Royal Kahal and the Decedents consisted of two post-booking logistical messages. (ECF 49, ¶¶11-13, Exs. A and B).

On or about February 20, 2025, the Decedents died from alleged carbon monoxide poisoning while staying at the Resort. (ECF 1, ¶¶1, 47, 49). The carbon monoxide poisoning was allegedly caused by the purportedly improper installation of a Navien NPE-210S tankless water heater in or adjacent to the Decedents' suite at the Resort. (ECF 1, ¶¶45, 50).

**IV. Procedural History.**

Plaintiffs filed their Complaint in this Court on February 3, 2026. ECF 1. On February 20, 2026, the same Plaintiffs, among others, commenced a concurrent action in the Ontario Superior Court of Justice in Chatham, Ontario (Court File No. CV-26-00001764-0000) (the "Canadian Action") against, *inter alia*, the same Moving Defendants in this action. A true and correct copy of the Canadian Action is attached hereto as Exhibit "2." The Canadian Action arises from the same incident described in the Complaint filed in this action, specifically the deaths of the Decedents from alleged carbon monoxide poisoning at the Resort in February 2025.

On June 2, 2026, all Moving Defendants filed motions to dismiss in this Court pursuant to Rule 12(b)(2) for lack of personal jurisdiction. (ECF 50-59). The Moving Defendants now bring

this motion to dismiss on the ground of forum non conveniens at the earliest practicable opportunity following their initial responsive filings.

## ARGUMENT

### I. This Motion Is Timely and Properly Before the Court.

A. Common Law Forum Non Conveniens Is Not Subject to Rule 12 Waiver.

Common law forum non conveniens is not a defense enumerated in Federal Rule of Civil Procedure 12(b). Because forum non conveniens is not listed in Rule 12(b), it cannot be waived by omission from an initial responsive filing pursuant to Rule 12(h)(1). Similarly, Rule 12(g)(2) limits subsequent Rule 12(b) motions but does not foreclose motions that fall outside the Rule 12(b) framework entirely.

The Supreme Court has recognized that forum non conveniens is a "non-merits ground for dismissal" that operates independently of the Rule 12(b) defenses, such as subject matter and personal jurisdiction. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). Courts in this District have addressed forum non conveniens motions on the merits even when brought after other Rule 12 motions. *See Heng Ren Invs. LP v. Sinovac Biotech Ltd.*, 542 F. Supp. 3d 59, 66, 68-69 (D. Mass. 2021) (finding lack of personal jurisdiction defenses were waived due to filing a case arising from the same nucleus of operative facts in the court but ruling on the merits of a forum non conveniens argument, rather than finding waiver); *Neelon v. Krueger*, 63 F. Supp. 3d 165, 170-72 (D. Mass. 2014) (the court considered a forum non conveniens motion brought two years after the case was filed and fifteen months after rulings on other dispositive motions on the merits without finding waiver); *Nandjou v. Marriott Int'l*, *Inc.*, CV No. 18-CV-12230-ADB, 2019 WL 2918043, at *7-8 (D. Mass. Jul. 8, 2019) (denying a forum non conveniens motion with leave to renew after discovery indicating lack of waiver if renewed after other merits-

based motions were decided); *Textron Fin. Corp. v. Oakboro Tractor & Equip.*, C.A. No. 09-085S, 2010 WL 608536, at *5 n.2 (D.R.I. Feb. 18, 2010) (considering the merits of a forum non conveniens motion brought seven months after the case began, stating "there is no time limit within which a motion to transfer venue must be filed").

**B. This Motion Is Brought at the Earliest Practicable Opportunity.**

The Moving Defendants filed their Rule 12(b)(2) motions on June 2, 2026, and now bring this forum non conveniens motion within fewer than three months of those initial responsive filings. *See* ECF 50-59. There has been no delay, no prejudice to Plaintiffs, and no suggestion that the Moving Defendants have engaged in any dilatory conduct. As the court observed in *Textron*, "a party seeking a change of venue should move with reasonable promptness after the factors favoring a convenience transfer become evident." 2010 WL 608536, at *5 n.2 (internal quotations omitted). The Moving Defendants have done precisely that.

**II. Legal Standard.**

"The common-law doctrine of *forum non conveniens* has continuing application in federal courts only in cases where the alternative forum is abroad." *Sinochem*, 549 U.S. at 430 (internal quotations and alterations omitted; emphasis in original); *see also Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 50 (2013) (confirming common law forum non conveniens continues to apply for transfer to foreign countries).

When considering motions to dismiss for forum non conveniens, the First Circuit applies a two-step inquiry. *Curtis v. Galakatos*, 19 F.4th 41, 47 (1st Cir. 2021); *Sysco Machinery Corp. v. Cymtek Solutions, Inc.*, 124 F.4th 32, 37 (1st Cir. 2024). "At step one, [the court] asks whether an adequate alternative forum exists," specifically considering whether "(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated

unfairly." *Sysco Machinery*, 124 F.4th at 37-38 (internal citations and quotations omitted). At step two, the court evaluates whether private and public interest factors "strongly favor[]" dismissal. *Sysco Machinery*, 124 F.4th at 38.

## III. Belize Is an Adequate Alternative Forum.

### A. All Parties Can Come Within Belizean Jurisdiction.

Belize satisfies the first prong of the adequate-alternative-forum inquiry because the Belizean courts are competent to adjudicate claims arising from the alleged incident at the Resort, and all relevant parties can be brought within its jurisdiction and appear in these courts. (Marshalleck Decl., ¶¶10-13, 15, 17). Royal Kahal is organized under the laws of Belize and operates the Resort in Belize. It is plainly subject to Belizean jurisdiction.

Upon information and belief, the Belizean contractors and architects implicated by the Complaint, including Defendants Mulholland, Belize Metal Works, Strukture, and Espat, are all citizens of Belize, are located in Belize, and subject to Belizean jurisdiction. (ECF 1, ¶¶13-16; Marshalleck Decl., ¶¶18, 20-21). Similarly, third-party witnesses and custodians whose testimony and records will likely be crucial to this case, such as Resort staff, legal and medical investigators, and government and tourism officials, are likewise in Belize and subject to Belizean process, not this Court's compulsory process. (Marshalleck Decl., ¶¶21, 26-30). On the other hand, a Belizean forum would permit their joinder and potential impleader. This factor alone "clearly support[s] holding the trial in" Belize. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 259 (1981).

### B. Belize Provides Adequate Remedies.

Belize is a common law jurisdiction with a well-developed legal system that provides remedies for negligence, wrongful death, and tort claims. (Marshalleck Decl., ¶¶7-13). Plaintiffs' remedies in Belize need not be identical to those available in the United States. Rather, they must

simply not be "so clearly inadequate or unsatisfactory that [they are] no remed[ies] at all." *Piper Aircraft*, 454 U.S. at 254; *Sysco Machinery*, 124 F.4th at 38; *Curtis*, 19 F.4th at 47-48.

Belize provides a civil forum for claims of the kind asserted here. (Marshalleck Decl., ¶¶10-13). Belize courts are competent to adjudicate such claims, and a foreign national may access those courts, subject to ordinary procedural requirements. (*Id*. at ¶¶14-17). Plaintiffs will have access to discovery mechanisms, including document disclosure, interrogatories, and requests for admission; trial; and appellate processes in Belize. (*Id*. at ¶¶14-16). Indeed, the U.S. Department of State's 2023 Country Report on Human Rights Practices for Belize[2] confirms that its "constitution provided for an independent judiciary, and the government generally respected judicial independence and impartiality." U.S. Dep't of State, Belize 2023 Human Rights Report, Section 1(e). The report further notes that Belize's constitution provides for "the right to a fair and public trial, and the judiciary generally enforced this right." *Id*. The State Department additionally recognized that Belize possesses "[a]n independent press, an effective judiciary, and a functioning democratic political system." *Id*. at §2(a). Notably, in 2023, the Belizean courts actively heard and resolved civil claims against the government itself, including a case where a victim's family "reached a settlement with the government and received compensation." *Id*. at §1(a). These findings from the United States' own executive branch confirm that Belize's judiciary is independent, functional, and capable of fairly adjudicating the types of tort and wrongful death claims at issue in this case.

## IV. Private and Public Interest Factors Strongly Favor Belize.

### A. The Private Interest Factors Favor Belize.

[2] Available at https://www.state.gov/reports/2023-country-reports-on-human-rights-practices/belize/ (last accessed August 19, 2026).

The private interest factors identified in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), overwhelmingly favor Belize. *Sysco Machinery*, 124 F.4th at 38. These factors include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id*. (quoting *Gilbert*, 330 U.S. at 508).

**i. Ease of Access to Sources of Proof.**

The physical evidence critical to this case is located exclusively in Belize. The Resort, the "Bird of Paradise" suite (Unit 101) in which Decedents stayed, the Navien NPE-210S tankless water heater, the venting system, and all construction work, permits, and records are in Belize. (ECF 1, ¶¶43, 45, 50, 60-66; Marshalleck Decl., ¶¶26-28). Upon information and belief, the Government of Belize seized, *inter alia*, the water heater and retains custody of it and of investigative materials relating to the incident, including photographs and videos of the scene, air quality samples at the scene, witness interview reports, autopsy and toxicology reports and medical examiner opinions, incident reports, and materials concerning testing by the Belize Tourism Board. (Marshalleck Decl., ¶¶26-29). Access to the government-held evidence must, therefore, be pursued through Belizean legal process, rather than assumed to be available through informal requests of Massachusetts discovery. (*Id*. at ¶¶30-32). Moreover, any forensic or engineering inspection of the premises can take place only in Belize. No physical evidence is located in Massachusetts, or Canada.

**ii. Availability of Compulsory Process and Cost of Witnesses.**

Courts give "particular attention to where the witnesses that the parties would rely upon are located and how burdensome it would be for them to appear." *Curtis*, 19 F.4th at 38 (internal

quotations omitted). "Additionally, courts must give due consideration to how many witnesses are third parties to the litigation and whether, despite their third-party status, they would be subject to compulsory process in either the home or the foreign forum." *Id*. (internal quotations and alterations omitted).

Some of the most critical witnesses in this case are located in Belize and are not subject to compulsory process in this Court, such as Resort staff who were present at or near the time of the incident, Belizean investigators who examined the scene, and medical personnel who conducted autopsies. (ECF 1, ¶¶48-50). Additionally, the cost of obtaining documents, and examining the premises for Belizean defendants Mulholland, Belize Metal Works and its employees, Espat, and the employees of Strukture would be substantially greater for both parties if integral discovery required travel between this District and Belize, rather being centralized in a single location. (*Id*. at ¶¶13-16, 65).

**iii. View of Premises.**

A view of the Resort premises, including the suite, the water heater installation, the venting system, and the building's layout, is available only in Belize. Given that this case turns on the physical configuration of a building system and its ventilation and the installation of a water heater (ECF 1, ¶¶86-88), the ability to view the premises, and in particular, these ventilation systems, is highly relevant.

**iv. Ability to Implead Third Parties.**

The Moving Defendants cannot implead the Belizean contractors and architects in this Court. *See Piper*, 454 U.S. at 259 (holding that "the inability to implead potential third-party defendants clearly supported holding the trial in" the foreign forum). Here, to the extent joinder of

any of the Belizean third parties described *supra* is essential to a complete adjudication of the claims and allocation of fault, impleader would be impossible in Massachusetts.

**v. Location of Parties.**

The Moving Defendants are located in Belize and Canada. None reside in Massachusetts. (ECF 51-1, ¶¶2-4; ECF 53-1, ¶¶2-4; ECF 55-1, ¶¶2, 7-8; ECF 57-1, ¶¶2, 9-10; ECF 59, ¶¶2, 6-7). Litigating in Massachusetts imposes substantial burdens on these foreign parties.

**B. The Public Interest Factors Favor Belize.**

The public interest factors identified in *Gilbert* likewise compel dismissal. *Sysco Machinery*, 124 F.4th at 38 (quoting *Gilbert*, 330 U.S. at 509). These factors include:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id*. (internal quotations omitted).

**i. Local Interest in the Controversy.**

Belize has an overwhelming interest in this dispute. The incident occurred on Belizean soil, at a Belizean Resort. The relevant design, construction, installation, and investigation took place in Belize, and the Belizean Government, including the Belize Tourism Board, have regulatory or investigative interests in the property and evidence. (Marshalleck Decl., ¶¶26-29). The Resort was constructed by Belizean contractors, was designed by Belizean architects, and is subject to Belizean building codes and safety regulations. (*Id*. at ¶¶18-25). Belize has a sovereign interest in ensuring that resorts operating within its borders comply with its laws and in adjudicating claims arising from alleged failures of its regulatory regime. *See Piper*, 454 U.S. at 260 ("[T]here is a local interest in having localized controversies decided at home" (internal quotations omitted)).

Massachusetts, by contrast, has no meaningful connection to the underlying events. No alleged act of negligence occurred here, no defendant resides here, and no evidence is located here.

#### ii. Applicability of Foreign Law.

The claims implicate Belizean law concerning the standard of care for construction and installation, building codes, permits, contractor licensing requirements and obligations, hotel licensing, and safety regulations applicable to the Resort's construction and operation are all matters of Belizean law. (ECF 1, ¶105 (alleging duty to ensure project completed "in accordance with applicable building codes and safety requirements"); Marshalleck Decl., ¶¶22-25, 30). The need to apply foreign law "point[s] towards dismissal." *Piper*, 454 U.S. at 260. A Belizean court is far better positioned to interpret and apply its own building codes and regulatory standards than this Court.

#### iii. Burden on Local Citizens.

Requiring Massachusetts citizens to serve as jurors in a case with no meaningful connection to their community and whose core events, physical evidence, construction, regulatory, and investigative issues are centered in Belize imposes an unfair burden. The deaths, Resort, relevant construction and installation, contractors, architects, likely government-held evidence, third-party witnesses, and the Moving Defendants are all foreign to Massachusetts. This is precisely the type of case the forum non conveniens doctrine is designed to redirect to a more appropriate forum.

## V. The Concurrent Canadian Action Further Supports Dismissal.

### A. Moving Defendants Request that the Court Take Judicial Notice of the Canadian Action.

The Canadian Action arises from the identical incident, specifically the deaths of the Decedents from alleged carbon monoxide poisoning at the Resort in February 2025, and names as defendants Fairhaven Properties, Royal Kahal, Michael Fairbairn, Wendy Fairbairn, David

Fairbairn, John Doe, and Jeffrey Mulholland—five of whom are defendants in this case. In the Canadian Action, Plaintiffs propose that the case be tried in the Municipality of Chatham-Kent, Ontario—the jurisdiction where Fairhaven Properties is incorporated, where its principal place of business is located, and where the individual Fairbairn Defendants reside. (Ex. 2, ¶ 30; ECF 1, ¶8; ECF 53-1, ¶2).

Under Federal Rule of Evidence 201(b)(2), a court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). The request may be made "at any stage of the proceeding." Fed. R. Evid. 201(d).

Federal courts routinely take judicial notice of records and filings from other courts, including foreign courts, as public records whose existence and content are not subject to reasonable dispute. "It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990). Consideration of judicially noticed public records on a motion to dismiss does not require conversion to a motion for summary judgment. *See Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993).

Defendants request that the Court take judicial notice solely of Statement of Claim filed in the Canadian action attached as Exhibit "2." Defendants do not ask the Court to accept the truth of any factual allegations contained in the Statement of Claim. Rather, Defendants ask that the Court take judicial notice of Plaintiffs' filing of an identical action in another forum while considering Defendants' argument that this Court is not the proper forum for this dispute.

### B. The First Circuit Permits Courts to Draw Logical Inferences from Concurrent Foreign Proceedings.

Plaintiffs have served some of the Moving Defendants with process in the Canadian Action (Ex. 2), confirming Plaintiffs' position that the Moving Defendants are subject to jurisdiction in Ontario. The existence of this concurrent foreign proceeding is significant to the forum non conveniens analysis. Specifically, the First Circuit has endorsed the practice of drawing logical inferences from the existence of concurrent foreign proceedings to inform the private interest factor analysis for forum non conveniens. *Sysco Machinery*, 124 F.4th at 42-43. In *Sysco Machinery*, the First Circuit drew a critical distinction from *Adelson v. Hananel*, 510 F.3d 43, 54 (1st Cir. 2007), which held that "[t]he existence of concurrent litigation is not a relevant factor to the [forum non conveniens] analysis" standing alone. *Id*. at 42 (quoting *Adelson*, 510 F.3d at 54). The First Circuit clarified that, while a court may not treat a parallel foreign proceeding as a freestanding factor favoring dismissal, a court may "[draw] logical inferences from the existence of those proceedings to inform its assessment of routine private-interest factors." *Id*. at 43. The First Circuit "decline[d] [the plaintiff's] invitation to rob courts of this source of particularly relevant information." *Id*.

This holding applies here. The Canadian Action is probative of several private interest factors already addressed in this memorandum. First, the Canadian Action confirms that foreign courts are fully capable of adjudicating claims arising from the subject incident occurring at the Resort. Second, Plaintiffs' decision to pursue claims against the Moving Defendants in Ontario undercuts any suggestion that this dispute can be resolved only in Massachusetts. Moreover, Plaintiffs' decision to file the concurrent Canadian Action, asserting substantially identical claims arising from the same incident, suggests that Plaintiffs themselves do not regard Massachusetts as the uniquely appropriate forum for this dispute.

### C. The Canadian Action Reinforces that Belize is the Proper Forum.

The concurrent Canadian Action further supports the conclusion that this dispute should not remain in Massachusetts. While the Canadian Action informs the private interest analysis, the Moving Defendants maintain that Belize, not Canada, is the proper forum for this dispute. The Canadian Action names only the Moving Defendants and a select few other defendants, but it does not include the Belizean contractors, architects, and other parties whose conduct is central to Plaintiffs' claims and the Moving Defendants' potential defenses.

As set forth above, the critical witnesses, governmental investigative materials, and likely physical evidence, are located in Belize, not Ontario or Massachusetts. Belize is the only forum in which all potentially responsible parties can be joined and subjected to compulsory process.

## CONCLUSION

For the foregoing reasons, the Moving Defendants respectfully request that this Court take judicial notice of the Canadian Action, and dismiss this action on the ground of forum non conveniens.

Respectfully Submitted:


*/s/ Gerard T. Leone, Jr.*
Gerard T. Leone, Jr., Esq.
BBO No. 555009
Hunton Andrews Kurth LLP
60 State Street, Suite 2400
Phone: (617) 648-2745
gleone@hunton.com
*Counsel for Defendants, Royal Kahal Resort, Ltd., Fairhaven Properties, Inc., Michael Fairbairn, Wendy Fairbairn, and David Fairbairn*

*/s/ Meghan O. Serrano*
Meghan O. Serrano, Esq.
BBO No. 660422
Shumaker, Loop & Kendrick, LLP
240 South Pineapple Ave., 9th Fl.
Sarasota, Florida 34236
Phone: (941) 366-6660
mserrano@shumaker.com
eholland@shumaker.com
*Counsel for Defendants, Royal Kahal Resort Ltd., Fairhaven Properties, Inc., Michael Fairbairn, Wendy Fairbairn, and David Fairbairn*


Dated: August 24, 2026

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be electronically sent to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants on August 24, 2026.

*/s/ Gerard T. Leone, Jr.*
Gerard T. Leone, Jr., Esq.
BBO No. 555009